## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### July 1, 1919.

# COMMISSIONERS OF PUBLIC CHARITIES v. ALECK LOTSKY.

(188 App. Div. 740.)

(1) BASTARDY*—CHAP. 517, LAWS 1918, AND POOR LAW, § 62, CONSTRUED.
Chapter 517 of the Laws of 1918 and section 62 of the Poor Law seem to indicate the intention of the Legislature that responsibility for the support of a bastard child is with the town or city of the actual *bona fide* residence of the mother and is not avoided by birth out of the State. but the *bona fide* residence of the mother within the city of New York is essential to the jurisdiction of the commissioner of public charities of the city of New York and the Court of Special Sessions.

(2) SAME—LIABILITY OF CITY OF NEW YORK FOR SUPPORT OF CHILD BORN WITHOUT STATE.
Where in a bastardy proceeding it appears that the child was born without the State, there should be an inquiry into the facts showing residence of the mother within the city of New York.

(3) SAME.
Where, in such a proceeding, the recital in the order of filiation of the complaint of the mother that she was delivered of a child in the city of New York is contradicted by her testimony on the trial that the child was born in the State of Connecticut, and there is no satisfactory evidence of the residence of the mother in the city of New York, and she was not asked where she lived or to explain how the child came to be born without the state, and the evidence on the issue as to whether the defendant is the father of the child is unsatisfactory, the entire proceeding should be remitted for a new hearing.
In such a case the order of filiation should recite the facts, including the court's finding of residence.

---

* See note on Bastardy, 23 N. Y. Crim. 33; Comm. v. Vasser, 33 N. Y. Crim. 156; People ex rel. Lawton v. Snell, 33 N. Y. Crim. 234, 34 N. Y. Crim. 209.

APPEAL by the defendant, Aleck Lotsky, from an order of filiation, made by the Court of Special Sessions, Borough of Brooklyn, City of New York, entered in the office of the clerk of said court on the 17th day of April, 1919, which adjudges the defendant to be the father of the bastard child of one Mary Karder and directs him to pay to the commissioner of public charities of the city of New York the sum of three dollars per week for the support and maintenance of the child, and further requires that he shall give an undertaking with sureties for the performance of the order.

*Forrest S. Chilton* [*David Grobery* with him on the brief], for the appellant.

*Willard S. Allen* [*William P. Burr, Corporation Counsel, Terence Farley* and *Martin Flanigan* with him on the brief], for the respondent.

KELLY, J.:

This court is slow to interfere with an order of this description, depending as it does largely on the credibility of the complainant and defendant, when the trial justices had the advantage of seeing and hearing the witnesses. But in this case, although the complainant averred in her voluntary examination that the child was born in the city of New York, she testified upon the hearing that the birth actually occurred in the State of Connecticut. Under the Poor Law (Consol. Laws, chap. 42 [Laws of 1909, chap. 46], § 62) this fact would impose no liability on the city of New York for the support of the child. (Keller v. Cleary, 56 App. Div. 466; 62 id. 609.) But by chapter 517 of the Laws of 1918 (amdg. Inferior Criminal Courts Act of the city of New York [Laws of 1910, chap. 659], § 31, subd. 3), enacted subsequent to the decision in the Cleary Case (supra), the Legislature provided for the case of a child born

without the State of New York, and conferred power upon the commissioner of public charities to take proceedings in the Court of Special Sessions, if the mother of said child is a *bona fide* resident of the city of New York, in the same manner as in the case of a bastard child born within the city of New York. This amendment of 1918, read with section 62 of the Poor Law, seems to indicate the intention of the Legislature that responsibility for the support of a bastard child is with the town or city of the actual *bona fide* residence of the mother, and is not avoided by birth out of the state possibly on a journey or transient stay out of its territory. But it is apparent that the *bona fide* residence of the mother within the city of New York is essential to the jurisdiction of the commissioner of public charities and the Court of Special Sessions in such exceptional cases. There should be inquiry into the facts showing residence of the mother in the city, and if the order of filiation is to contain recitals of facts at all, they should be correctly recited. In the case at bar, the recital in the order appealed from of the complaint of the mother that she was delivered of a child in the city of New York is contradicted by her testimony on the trial that the child was born in the State of Connecticut. Nevertheless, if she was a *bona fide* resident of the city, the proceeding was authorized. In such case the order of filiation should recite the facts, including the court's finding of residence. There is no satisfactory evidence of the residence of the mother. True, it is stated in her voluntary examination, before issuance of the warrant, that she resided in Brooklyn, but that examination contains erroneous statements as to the place of birth of the child. On the trial she was not asked where she lived or to explain how the child came to be born without the state. The jurisdiction of the court depends upon the fact of residence, and we think the order should be reversed and a new trial ordered for this reason. While we would hesitate to reverse the finding that defendant is the father of the child, the evidence on this issue is also very meagre. The com-

plainant, an unmarried woman of twenty-four, testified that she had two illegitimate children before the birth of the child charged to defendant. There was but one act of intercourse with defendant, apparently on the day she first met him. The defendant denied intercourse with the complainant, but testified that, at her solicitation, he allowed her to remain overnight in his apartments in company with one of her two illegitimate children already born, and she did not contradict him. She knew that he was a married man and that his wife was in a hospital where she died some months later. He remarried, and this complaint was made against him after his remarriage, although there is no evidence of any continued intimacy or even meeting between the date of the one act of intercourse and the remarriage. There was also evidence that the complainant had a former proceeding in the Court of Special Sessions presumably relating to the one or both of the other children, but owing to the improper form of the questions put to complainant, the evidence was excluded. We think in the interests of justice the entire proceeding should be remitted to the court for a new hearing.

The order of filiation of the Court of Special Sessions, Borough of Brooklyn, city of New York, should be reversed, and a new hearing upon the merits ordered.

JENKS, P. J., MILLS, RICH and JAYCOX, JJ., concurred.

Order of filiation of the Court of Special Sessions reversed, and a new hearing upon the merits ordered.